NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

YOEL OSHRI,

          Plaintiff,

   v.

PNC BANK, NATIONAL ASSOCIATION, *et al.*

          Defendants.

Civil Action No. 3:17-cv-11594-BRM-DEA

OPINION

---

**MARTINOTTI, DISTRICT JUDGE**

    Before this Court is Defendants PNC Bank, National Association ("PNC Bank"), Tanisia Richardson ("Richardson"), and Betty Harrison's ("Harrison") (collectively "Defendants") Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim. (ECF No. 9.) Plaintiff Yoel Oshri ("Oshri") opposes the Motion. (ECF No. 10.) Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendants' Motion to Dismiss for Lack of Jurisdiction is **DENIED in part** and **GRANTED in part**, and their Motion to Dismiss pursuant to Rule 12(b)(6) is **DENIED**.

**I. BACKGROUND**

   **A. The Foreclosure Action**

    Since 2002 Oshri has been the owner of property located at 528 Massachusetts Avenue, Lakewood, New Jersey. (ECF No. 1 ¶ 16.) On August 20, 2004, Oshri applied for a refinance of his mortgage loan with PNC Bank. (*Id.* ¶ 17.) He executed a fixed rate note (the "Note") in the sum of $65,000. (ECF No. 9-3.) To secure payment of this obligation, Oshri executed a mortgage

(the "Mortgage"). (ECF No. 9-4.) The term of the loan was 15 years at a 5.488 % annual percentage rate payable in 180 monthly installments in the amount of $531.58. (*Id.*; ECF No. 1 ¶¶ 19-21.) The final charge, *i.e.*, the amount the credit will cost Oshri, was $30,684.40. (ECF No. 1 ¶ 20.)

Oshri's monthly installments would be automatically deducted from an account he was required to open with PNC Bank. (*Id.* ¶ 22.) Oshri was responsible for depositing enough funds in the PNC Bank account to cover the monthly installments.. (*Id.* ¶¶ 24, 27-28.)

On January 5, 2013, Oshri defaulted on the Mortgage. (ECF No. 9-4 ¶ 8.) Consequently, on April 18, 2014, PNC Bank filed a foreclosure action in the Superior Court of New Jersey, Chancery Division, Ocean County (the "Foreclosure Action"). (*See* ECF No. 9-4.) On October 2, 2014, Oshri filed an Answer and Counterclaims against PNC Bank, and on August 31, 2015, he amended his pleading and filed a Third-Party Complaint against a law firm and two individuals, who are not involved in this present action. (ECF No. 9-5.) PNC Bank moved to dismiss Oshri's Counterclaims and Third-Party Complaint, and to strike his Amended Answer. (ECF No. 9-7.) On November 10, 2015, the Superior Court granted all relief in favor of PNC Bank. (ECF Nos. 9-6, 9-7.) On December 18, 2015, the Superior Court denied Oshri's Motion for Reconsideration seeking to vacate the dismissal of his counterclaims and Third-Party complaint as being non-germane to the foreclosure action. (ECF No. 10-3.) On that same date, the Superior Court also denied Oshri's motion for reconsideration of the court's granting of summary judgment in favor of PNC Bank. (*Id.*) A writ of execution was issued on June 30, 2016. (ECF No. 9-8.) On July 19, 2016, a final judgment was entered in the Foreclosure Action in favor of PNC Bank. (ECF No. 10-3.)

On July 25, 2016, Oshri filed a notice of appeal with the New Jersey Appellate Division, appealing every order issued against him in the Foreclosure Action (the "Appeal"). (ECF No. 9-

9.) On August 12, 2016, he filed an amended notice of appeal. (ECF No. 9-10.) On March 27, 2017, the Appellate Division denied all relief sought and affirmed the Superior Court's decision. (ECF No. 9-11.)

### B. This Action

On November 14, 2017, Oshri filed this action alleging six counts: (1) unlawful seizure of his account; (2) fraud; (3) a violation of the Fair Debt Collection Practices Act ("FDCPA"); (4) wrongful foreclosure; (5) tampering with court records for profit; and (6) violations and abuse of due process. (*See* ECF No. 1.) His Complaint requests the following relief:

1. For a declaration of the rights and duties of the parties, specifically that the foreclosure of [Oshri]'s residence was wrongful.
2. For cancellation of [Oshri]'s mortgage and to relive him from any debt or monies owed to the Defendants against the aforesaid loan.
3. To quiet title and discharge of lien in favor of [Oshri] and against Defendants.
4. For compensatory, special, general and punitive damages according to proof against all Defendants.
5. For civil penalties pursuant to statute, restitution, injunctive relief and reasonable attorneys fees according to proof.
6. For reasonable costs of suit and such other and further relief as the Court deems proper.

(*Id.*) On January 16, 2018, Defendants filed a Motion to Dismiss the Complaint. (ECF No. 9.) Oshri opposes the Motion. (ECF No. 10.) Oshri's opposition includes two opposition briefs (ECF Nos. 10-2 and 10-4) and a separate Statement of Facts drafted in complaint form (ECF No. 10-2).[1]

---

[1] Most of the facts included in Oshri's Statement of Facts (ECF No. 10-2) are not included in his Complaint. The Court cannot consider facts not in the Complaint, integral to the Complaint, or explicitly relied on by the Complaint. *In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir. 1999). As such, the Court will not consider ECF No. 10-2. To the extent Oshri wishes to amend his Complaint, he shall file a motion to amend pursuant to the Federal Rules of Civil Procedure.

On February 21, 2018, Defendants filed a letter asking the Court to strike Oshri's opposition as untimely. (ECF No. 13.) The Court denied Defendants' Letter request and allowed Defendants to file a reply by March 2, 2018. (ECF No. 15.) Defendants only filed their reply on March 5, 2018. (ECF No. 17.) Therefore, Oshri filed a letter requesting to strike Defendants' reply for violating the Court's Order. (ECF No. 18.) Because the Court provided Oshri with an opportunity to file a late opposition, it will also accept Defendant's late reply. Accordingly, Oshri's letter request (ECF No. 17) is **DENIED**.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

When a defendant moves to dismiss a claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court must determine whether defendant is making a "facial or factual challenge to the court's subject matter jurisdiction." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Under a facial attack, the movant challenges the legal sufficiency of the claim, and the court considers only "the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." *Gould Elecs.*, 220 F.3d at 176; *Mortensen*, 549 F.2d at 891 ("The facial attack does offer similar safeguards to the plaintiff [as a 12(b)(6) motion]: the court must consider the allegations of the complaint as true."). The Court "may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction." *D.G. v. Somerset Hills Sch. Dist.*, 559 F. Supp. 2d 484, 491 (D.N.J. 2008) (citing *Cardio–Medical Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983)).

Under a factual attack, however, the challenge is to the trial court's "very power to hear the case." *Mortensen*, 549 F.2d at 891. Thus:

> [T]here is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id.* Moreover, in a factual attack, "the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction." *Gould Elecs.*, 220 F.3d at 178.

Regardless of the analysis, the plaintiff bears the burden of demonstrating the existence of subject matter jurisdiction. *See McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006); *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009) (citing *Carpet Grp. Int'l v. Oriental Rug Importers Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000)).

Here, Defendants are asserting a facial 12(b)(1) challenge because they assert Oshri's claims are barred by the *Rooker-Feldman* doctrine. (ECF No. 9-1.) The Court, therefore, accepts the allegations in the Complaint as true.

**B. Federal Rule of Civil Procedure 12(b)(6)**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

5

will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.,* 184

F.3d at 287. Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426.

## III. DECISION

### A. *Rooker-Feldman*

Defendants argue Oshri's claims are precluded by the *Rooker-Feldman* doctrine because the final judgment in the Foreclosure Action "decided the following elements in Defendants' favor: the validity of the Note and Mortgage; [Oshri]'s default; and Defendants' right to foreclose." (ECF No. 9-1 at 8.) Oshri contends "there was never any litigation in the Superior Court of New Jersey" because Defendants moved to dismiss all his affirmative defenses and counterclaims. (ECF No. 10 at 2-3.)

Pursuant to *Rooker-Feldman*, federal district courts lack subject matter jurisdiction to review and reverse state court judgments. *In re Knapper*, 407 F.3d 573, 580 (3rd Cir. 2005). *Rooker–Feldman* serves to bar a claim when: (1) the federal claim was actually litigated in state court before the plaintiff filed the federal action or, (2) "if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." *Id.* The Third Circuit has held a federal claim is "inextricably intertwined" with an issue adjudicated by a state court when: "(1) the federal court must determine . . . the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment." *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009) (quoting *Walker v. Horn*, 385 F.3d 321, 330 (3d Cir. 2004)). Significantly,

> [f]our requirements must be met for the [*Rooker-Feldman*] doctrine to apply: (1) the plaintiff lost in state court; (2) the plaintiff complains of injury caused by the state court judgment; (3) the state

7

court judgment was rendered before the federal suit was filed; and
(4) the plaintiff invites the district court to review and reject the state
court judgment.

*Gage v. Wells Fargo Bank, NA AS*, 521 F. App'x 49, 50–51 (3d Cir. 2013) (citing *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010)). Where, on the other hand, the federal plaintiff presents "some independent claim, albeit one that denies a legal conclusion that a state court has reached," the doctrine does not apply. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005), quoted in *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 547–48 (3d Cir. 2006). In such an instance, jurisdiction is confirmed and the court should then consider "whether the defendant prevails under principles of preclusion." *Exxon Mobil*, 544 U.S. at 292.

The *Rooker-Feldman* doctrine "is a narrow doctrine that applies only in limited circumstances." *Shibles v. Bank of Am., N.A.*, No. 17-2386, 2018 WL 1448670, at *2 (3d Cir. Mar. 23, 2018) (citations omitted); *In re Philadelphia Entm't & Dev. Partners*, 879 F.3d 492, 499 (3d Cir. 2018) ("[F]ederal courts had been applying the *Rooker-Feldman* doctrine too broadly and consequently it clarified that the doctrine is confined to 'limited circumstances' where 'state-court losers complain[] of injuries caused by state-court judgments rendered before the district court proceedings commend and invit[e] district court review and rejection of those judgments.") (citation omitted). The four requirements "must be met for the doctrine to apply." *Gage*, 521 F. App'x at 50–51.

The Court agrees that the first and third factors of the doctrine are satisfied, as final judgment was entered in the Foreclosure Action against Oshri on July 19, 2016, prior to the initiation of this action in federal court. (ECF No. 10-3.) In several counts in his Complaint, Oshri is complaining about the injuries caused by the Foreclosure Action and requesting this Court,

8

explicitly or implicitly, to review and reject the state court judgment. However, there are also several counts that would not require this Court to undercut the validity of the state court's foreclosure judgment or result in inconsistent decisions. The Court will address each Count in turn.

In Count One, Oshri claims Defendants unlawfully seized his bank account for his monthly mortgage installment payments and "intentionally failed to withdrawn [sic] the monthly mortgage payments . . . although there were enough funds in the [Oshri]'s account to cover about six (6) future installments [sic] payments against the loan." (ECF No. 1 ¶ 43.) Although Oshri does not specifically request that the Court vacate or set aside the foreclosure judgment in Count One, he does implicitly request that the Court invalidate the Foreclosure Action because he had the sufficient funds in his account and default should have never been granted. A favorable decision for Oshri would have the effect of overruling the Foreclosure Action, which determined he was in default and owed a sum certain. Accordingly, Defendants' Motion to Dismiss is **GRANTED** as to Count One.

In Count Two, Oshri claims he was defrauded by Defendants when they induced him to send them $2,500, instead of $4,252.64 (the amount overdue in monthly payments of principal and interest) as a compromise, to reinstate his mortgage and stop the initial foreclosure process. (*Id.* ¶¶ 45-53.) Oshri's claim is barred by *Rooker-Felman* only to the extent this count seeks to invalidate the mortgage based on said actions. However, Oshri leaves the door open for a recovery under fraud, which does not depend on the Court deciding the validity of the mortgage. Accordingly, Defendants' Motion to Dismiss is **DENIED** as to Count Two.

In Count Three, Oshri alleges Defendants violated the FDCPA "by way of sending via fax and US Mail, a collection letter dated March 7, 2014, to [Oshri]; demanding the amount of $7,897.20 to be paid, and included the amount of $1,380 for attorney fees and cost as a condition

9

to reinstate [Oshri]'s mortgage loan." (*Id.* ¶ 55 (emphasis removed).) Defendants allegedly included attorney fees in the amount to be paid even though no counsel was hired for that collection purpose. (*Id.*) In addition, Oshri alleges "Defendants intentionally failed to provide the mandatory FDCPA Notice as requires [sic] by laws [sic] . . . advising him of his rights to dispute the debt prior to filing their Complaint against him." (*Id.* ¶ 58.) Count Three is not premised on an allegation that the Foreclosure Action was invalid. Instead, this FDCPA claim involves Defendants' misrepresentations and fraudulent efforts to collect on the debt. For this reason, Defendants' Motion to Dismiss with respect to Count Three is **DENIED**.

In Count Four, a wrongful foreclosure claim, Oshri explicitly asks the Court to vacate the final judgment in the Foreclosure Action, because it was based on fraud. (*Id.* ¶¶ 85-87.) Oshri requests "the said Note and mortgage shall be cancelled, the lien removed, and the title shall be cleared from any cloud hold by Defendants against [Oshri]'s property." (*Id.* ¶ 87.) A favorable decision for Oshri on this Count would require the Court to overrule the Foreclosure Action's judgment. Therefore, Defendants' Motion to Dismiss Count Four is **GRANTED**.

Count Five alleges Defendants tampered with the Superior Court's records "[t]o avoid the trial day where they will be requires [sic] proving [sic] that [Oshri] was in default with his mortgage loan but obviously could not do that since they knew that [Oshri] was NEVER in default of his mortgage whatsoever." (*Id.* ¶ 103.) Oshri alleges Defendants tampered with the docketing records to forge the return date on their summary judgment motion. (*Id.* ¶ 102.) Determining whether Defendants tampered with Court records to forge the summary judgment motion date and grant damages does not require the Court to review and reject the state court judgment. For this reason, Defendants' Motion to Dismiss Count Five is **DENIED**.

Lastly, Count Six alleges violations of Oshri's due process rights. Specifically, Oshri alleges he was deprived of a fair trial because he was denied the opportunity to submit an opposition to the summary judgment motion and to take oral depositions; Defendants were allowed to file things out of time; Defendants obtained a final judgment through fraud, and Defendants tampered with the Superior Court's records. (*Id.* ¶¶ 110-116.) Determining whether Defendants violated his Due Process rights does not require the Court to review and reject the state court judgment. Accordingly, Defendants' Motion to Dismiss Count Six is **DENIED**.

B. **Entire Controversy Doctrine**

Defendants argue Oshri's Complaint is also "subject to dismissal under the doctrines of *res judicata* and New Jersey's entire controversy doctrine." (ECF No. 9-1 at 9.) Specifically, Defendants argue the Complaint "represents nothing more than [Oshri]'s last ditch effort to re-litigate claims that have already been decided to [Oshri]'s detriment." (*Id.* at 12.) Oshri contends the Foreclosure Action did not result in a final judgment on the merits. (ECF No. 10 at 11.) He further argues Richardson and Harrison were not parties in the Foreclosure Action, therefore his claims against them are not precluded. (*Id.* at 12-13.)

New Jersey's entire controversy doctrine is "an extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or series of events in one suit." *Chavez v. Dole Food Co.*, 836 F.3d 205, 228 n.130 (3d Cir. 2016). The doctrine

> requires a party to bring in one action all affirmative claims that it might have against another party or be forever barred from bringing a subsequent action involving the same underlying facts. The central consideration is whether the claims arise from related facts or the same transaction or series of transactions.

*Opdycke v. Stout*, 233 F. App'x 125, 129 (3d Cir. 2007) (marks and citations omitted); *see also Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2015). "The purposes of the doctrine are threefold:

11

(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." *Ditrolio v. Antiles*, 662 A.2d 494, 502 (N.J. 1995). The Third Circuit has ruled that "[a] federal court hearing a federal cause of action is bound by New Jersey's Entire Controversy Doctrine, an aspect of the substantive law of New Jersey, by virtue of the Full Faith and Credit Act, 28 U.S.C. § 1738 (1994)." *Litgo N.J., Inc. v. Comm'r N.J. Dep't of Envtl. Prot.*, 725 F.3d 369, 400 n.2 (3d Cir. 2013) (quoting *Rycoline Prods. v. C & W Unlimited*, 109 F.3d 883, 887 (3d Cir. 1997)).

The entire controversy doctrine applies to foreclosure proceedings, but encompasses only "germane" counterclaims. N.J. Ct. R. 4:64–5 ("Only germane counterclaims and cross-claims may be pleaded in foreclosure actions without leave of court."); *see also In re Mullarkey*, 536 F.3d 215, 228 (3d Cir. 2008). The word "germane" is construed very narrowly in this context. "The use of the word 'germane' in the language of the rule undoubtedly was intended to limit counterclaims in foreclosure actions to claims arising out of the mortgage transaction which is the subject matter of the foreclosure action." *Leisure Technology–Northeast v. Klingbeil Holding Co.*, 349 A.2d 96, 98 (N.J. 1975). For example, in *Mullarkey*, the Third Circuit found that because Mullarkey did "not contend that the Defendant's actions cause the default of his mortgage obligations" and "[r]ather, his claims are based on the actions and representations of the [the defendant] during the bankruptcy proceedings," they were not germane. *In re Mullarkey*, 536 F.3d at 230. Therefore, courts have found counterclaims in foreclosure proceedings to be "germane" if they arose out of the mortgage that was the basis of the foreclosure action or were dispositive to the foreclosure proceeding. *See e.g.*, *Coleman v. Chase Home Fin., LLC ex rel. Chase Manhattan Mortg. Corp.*, 446 F. App'x 469, 472 (3d Cir. 2011); *In re Mullarkey*, 536 F.3d at 230.

*Res judicata* bars plaintiffs from bringing causes of action that were already adjudicated in an earlier action between two parties or that could have been determined in an earlier action. *Watkins v. Resorts Int'l Hotel and Casino, Inc.*, 124 N.J. 398, 409 (1991). "Res judicata, or claim preclusion, is a court-created rule that is designed to draw a line between the meritorious claim on the one hand and the vexatious, repetitious and needless claim on the other hand." *Purtner v. Heckler*, 771 F.2d 682, 689–90 (3d Cir. 1985) (footnote and citation omitted). The doctrine "bars a party from initiating a second suit against the same adversary based on the same 'cause of action' as the first suit." *Duhaney v. Atty. Gen. of U.S.*, 621 F.3d 340, 347 (3d Cir. 2010) (citing *In re Mullarkey*, 536 F.3d at 225). "A party seeking to invoke res judicata must establish three elements: '(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.'" *Id.* (quoting *In re Mullarkey*, 536 F.3d at 225). "The doctrine of res judicata bars not only claims that were brought in a previous action, but also claims that could have been brought." *In re Mullarkey*, 536 F.3d at 225 (citing *Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3d Cir. 2007)).

Defendants argue Oshri was required, by the entire controversy doctrine, to assert all the claims in his Complaint against Defendants in the Foreclosure Action. Defendants contend Oshri's failure to bring those claims against them in the Foreclosure Action precludes him from bringing those claims in this action. However, Defendants' argument is fundamentally flawed in that the entire controversy doctrine only applies to claims that are germane to the foreclosure proceedings.

Because the Court has already dismissed Oshri's unlawful seizure and wrongful discharge claims, it will only address the remaining four claims. The Court finds the entire controversy doctrine does not apply to Oshri's fraud, FDCP, tampering with court records, and due process claims against Defendants because they were not germane to the Foreclosure Action. These claims

are not challenging Defendants' right to ultimately foreclose; rather, rather they challenge actions during the collection process that violated the FDCPA and constituted fraud. In addition, these claims challenge Defendants' and the Superior Court's actions during the Foreclosure Action, which allegedly violated his rights. The Foreclosure Action determined whether Oshri fulfilled his obligations under the Mortgage and defaulted on his obligations. Those facts do not give rise to Oshri's other claims because his claims are not premised on an allegation that Defendants did not fulfill their obligations or that the Foreclosure Action was invalid.

Indeed, Oshri would have had to interrupt the Foreclosure Action multiple times and file motions to amend or motions for sanctions to bring its claims that were allegedly occurring at different times during that proceeding. Such a requirement would be inefficient and delay the proceeding. *K–Land Corp. No. 28 v. Landis Sewerage Auth.*, 800 A.2d 861, 868 (N.J. 2002) ("The entire controversy doctrine [is] an equitable preclusionary doctrine whose purposes are to encourage comprehensive and conclusive litigation determinations, to avoid fragmentation of litigation, and to promote party fairness and judicial economy and efficiency."). In addition, in his Superior Court Complaint Oshri asserted similar claims in his counterclaims to the counts asserted in the Complaint before this Court. (*See* ECF No. 9-5.) However, the Superior Court dismissed his counterclaims as being non-germane to the Foreclosure Action. (ECF No. 10-3.) Accordingly, the Court is not barred from hearing Oshri's claims under the entire controversy doctrine. Defendants' Motion to Dismiss pursuant to the entire controversy doctrine is **DENIED**.

This Court's reasoning set forth above likewise applies to Defendants' *res judicata* argument, namely, this suit was not based on the same cause of action as the Foreclosure Action, which determined whether Oshri fulfilled his obligations under the Mortgage and default on his obligations. Oshri did not receive a final judgment on the merits as to his fraud, FDCPA, tampering

with court records, and due process claims because the Superior Court dismissed those counterclaims because as non-germane to the action. Therefore, *res judicata* does not bar Oshri's claims. Accordingly, Defendants' Motion to Dismiss based on *res judicata* is **DENIED**.

**IV. CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) is **DENIED** in its entirety, but their Motion to Dismiss for Lack of Jurisdiction is **GRANTED in part** and **DENIED in part** and Counts One and Four are dismissed. Counts Two, Three, Five, and Six will proceed.

Date: August 29, 2018  */s/ Brian R. Martinotti*  
**HON. BRIAN R. MARTINOTTI**  
**UNITED STATES DISTRICT JUDGE**